Appellant. Mr. Smith for the Appellant, Mr. Lenners for the Appellant. Good morning and may it please the Court, my name is Greg Smith, appointing counsel for Robert Miller, and I ask you today to vacate Judge Leon's decision below on Mr. Miller's ineffective assistance claims. I will turn briefly to the clarification we request and then address the merits, seriatim, the ineffectiveness claims we've raised below. First and briefly, this Court should vacate Judge Leon's statement that the parties had agreed to raise all ineffectiveness claims below. Even the government concedes this sloppy factual finding was simply wrong. And it's not ameliorated by Judge Leon's later statement that only the ineffectiveness claims now right and not before the Court will be deemed waived in any future 2555 action, 2255 proceeding. Especially since Judge Leon never defines what is now right. He could simply have been excluding only later ineffectiveness claims. If this is not corrected, it seems reasonably certain Judge Leon could say below that it was waived if it is left in place after this appeal. And you should vacate it, especially since Mr. Miller himself may well end up uncounseled filing in 2255. There certainly seems no harm in reversing this statement when everyone agrees that it was flat wrong. The cost-benefit analysis here should favor vacating what is conceded to be clear error. Turning now to the merits of the ineffectiveness claims. On that issue, there's ineffectiveness on suppression, under the Speedy Trial Act, at trial, and at sentencing. But in all of these, it is important to point out first this Court's standard of review is de novo. And that standard applies to Judge Leon's adoption of the government's conclusions of law. Because he never adopted the government's proposed findings of fact. He only adopted their conclusions of law. The government, in its brief, seeks to conflate those. Its brief talks about adopted findings, as if it's trying to fool you and seeking to insert its own language into Judge Leon's opinion through those conclusions of law, saying those are his findings. Can I ask a question about the Strickland standard generally? Judge Leon made several findings about why things weren't prejudicial because he would have acted in the same way or would have ruled a certain way had an issue been raised, et cetera. What relevance do we give that at this point? Because I thought that in Strickland, we're supposed to see what the hypothetical, objectively reasonable judge would do, rather than looking at what this particular judge subjectively says he or she would have done. I think that's right. It is an objective standard. And in the context of what you just indicated, he would be applying the facts to the law. And under this Court's precedent, that is a de novo standard of review. So the question is, would you do the same? And I think that's the standard. Looking at it objectively, would you do the same? Even if the government's attempt to incorporate the language of its briefs is allowed, it isn't subject to any deference unless you agree with those findings. And if the facts don't support those conclusions of law, it shouldn't be affirmed. The standard here, again, is de novo. Would you decide this the same way yourself? Now, turning to the merits of the suppression issue, Mr. Jeffress's actions were deficient, and without those deficiencies, it is reasonably liking the proceedings at the motions hearing and at trial would have been different on suppression. His deficiencies are obvious. Let's suppose we agree with you with that for the sake of argument. Where is the prejudice if there was indeed probable cause to search the vehicle? Judge, I think that the probable cause is not established. The only evidence below, well, it was a warrantless seizure, and therefore the presumption should be that it is an unreasonable search. The only probable cause finding below was based on what Mr. Saylor's supposed knowledge was on April 8th, but there was no evidence that he knew of criminality on April 8th. The only evidence was that he had interviewed people, he had investigated, not what he knew on April 8th. Any probable cause was based on pure speculation by Judge Leon, and it's also refuted by the fact that they didn't arrest Mr. Miller on these charges on April 8th. If they had probable cause, they would have arrested him on these charges, or they certainly could have. There's no indication of that at all. Even if there is probable cause. They didn't arrest him on these charges. They had other charges that they could arrest him on. That's right. They arrested him on the other charges. But Saylor never said he could or represented that he would arrest him on these. There were magistrates they could easily have gone to. They made no effort to do so. I don't understand why that's relevant. Typically, the attorney's office charges one charge, or the agents charge one, and then it's added to later. You agree that's the typical. Normally, it's not every single charge. It's available charge. You're correct, Your Honor. They could arrest him on other charges. They didn't arrest him on this, nor did they go to the magistrate. The magistrate was clearly available, and they didn't for the search or for the arrest. Also, the probable cause requirement depends on the automobile exception applying here. The automobile exception doesn't apply here because the search was not done until the automobile was moved. So the automobile exception. But the person who moved the automobile clearly had lawful authority to move it. To move it, but not to give away the boxes. She was a mere bailee, and we cite cases in our brief that a bailee does not have the authority to allow the boxes, to turn over the boxes. And even if the search. Well, she didn't turn over the boxes. She moved the car, and then they got a warrant to search the boxes, right? No, Your Honor. She moved the car. They seized the boxes, and then three weeks later, they got the search warrant. And that's an additional issue. Even if the search and the seizure was appropriate, or excuse me, the search of the car and the seizure of the boxes was appropriate, the search of the boxes themselves, the contents, they took three weeks to get a warrant, and we indicate that that separately is unreasonable. So that's a separate basis for suppressing the evidence. I think that the only case I recall seeing about why the automobile exception didn't apply was a Fifth Circuit case from many years ago that didn't seem to me closely on point to our facts. What's your best authority for why the automobile exception doesn't apply here? Judge, I don't. I guess I could supplement if you would like, but I think that the automobile exception typically applies when an auto is. The basis for the automobile exception is it may be moved, and there's a risk that the automobile may be moved. Here, where they themselves moved the automobile, the underlying principle behind the automobile exception simply doesn't apply. But as I say, even if the automobile exception did apply, they waited three weeks to get the warrant. So that alone is a separate basis to suppress. Finally, let me just say that there is a reasonability that the suppression would have affected the trial. Their claim that it wouldn't have made a difference is irreconcilable with Judge Leon's claim that the government's case was built on the same evidence. His later assertion, pure speculation that other evidence was likely duplicative, was just pure speculation, and there's no basis for it. There was no effort to try to show whether it was the fruit of the poisonous tree under the Wong Sung doctrine. And most importantly, Judge Leon simply failed to apply the proper legal standard. He even expressed his open disdain for this Court's Muhammad decision, which said that the issue is whether one juror, you might so doubt in the mind of one juror. Can I ask you about that? I am really puzzled. You say Muhammad established a new standard? So you think the panel, what, overruled Strickland in that case? No, Your Honor. I don't believe that at all, Chief Judge Garland. What I do think is it clarified, and the parameters of that clarification were simply Judge Leon, when he heard that that was the standard as expressed in Muhammad, he literally said, who wrote that opinion? And then, after being told that that was the binding precedent, he refused to apply it, or he simply didn't apply it, never cited it. So I'm puzzled by barking on this tree so long. Muhammad, for the proposition that you're speaking about, quotes Wiggins' Supreme Court opinion from quite a while ago. So it's not as if Muhammad established anything new. And in the same opinion in which Muhammad cites that, it cites the standard rule, the standard formulation. There is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Payne v. Stansbury, quoting Strickland. And Judge Leon cites exactly the same on page 11 of his opinion. So I really don't understand the argument that either there's something new here or that Judge Leon didn't understand what the standard should be. Well, we cited Muhammad to him specifically, read that portion of the opinion. And in addressing exactly what Your Honor just raised, Muhammad clarified what it would be. He didn't clarify it. It just restated it in different words. Right. And the judge cited the standard Strickland formulation. And because there is no difference between the two, I don't understand how you can claim he applied the wrong standard. Well, Judge, I guess what I would say was a clarification in this respect. The results of the proceeding would have been different, as Muhammad now explains, if a juror, if you could sow doubt in the mind of one juror. That is a clarification in a form. That's because if there was a difference in one juror, there wouldn't be a conviction. That's right. That is exactly the same thing as saying that there would be a different outcome in the proceeding. I don't think you've made some very good arguments. This does not strike me as one worth your pushing for. All right. Fair enough. I will move on, except to say that I think Muhammad wanted judges to drill down on whether doubt could be sowed in the minds of one juror. But turning to the Speedy Trial Act, let me talk about ineffectiveness there. There was no strategic judgment by counsel. Under the law, deference to a counsel's strategic judgment means their actual strategic judgment, not deference to any theoretical judgment they, quote, might well have reached but never did. There was no finding, no ineffectiveness finding. Well, no ineffectiveness finding could ever be possible if that's the standard. Nor is that honoring a counsel's choices when you say that the standard is what strategic judgment they might well have reached. So counsel, in a long back-and-forth in his transcript, said we discussed that he discussed with the, with his client that his client did not want a speedy trial, that his client had a number of documents he wanted to investigate, and he could only look at them at the D.C. jail efficiently, and that they, and he asked him several times if he wanted a speedy trial, and he said he didn't. Your Honor is correct. Your Honor is correct that there was no, that the client did not say that he wanted a speedy trial. The other way around, that the client didn't want a speedy trial. But there's a distinction between do you want a speedy trial and do you want a speedy trial dismissal. And the question is, did he ever know he had a right to a dismissal? And the answer to that is no. So surprise there's a product defect. Maybe the attorney and client decide they think. Now, now, in a way, what the client, you know, I don't understand why you think that it, what Mr. Jeffress testified to was that he had, he and his client had discussed that he wanted to stay in the D.C. jail, that he had work to do on preparing, that he had work that Jeffress had to do to help him prepare. When Jeffress was asked about what the consequences of having asked for a dismissal would be, he said it would have been unfair to the court to have gone all along asking for delays and not going any other way, and it wouldn't have made any difference because, in his experience, the U.S. Attorney's Office would have immediately indicted, he would not have been moved back to Maryland, he would have been immediately re-indicted, and it would have been a dismissal without prejudice. So I guess I don't see anything deficient in that kind of analysis. Well, I think it's deficient. I think it's obviously deficient when a criminal lawyer is unaware of his client's right to get, right to get a dismissal. That's what we have here. Now, I understand the court's point. Did he want a speedy trial? He did not. They did discuss that, and he didn't say he wanted a speedy trial. But the issue of whether he got a dismissal, he had a right to a dismissal. Do you want your case dismissed? You're right, Judge, that maybe Jeffress, in his mind, even though he didn't actually know that it was a dismissal, may have thought, well, if it occurred, then here would be the benefits and costs. But I guess the point I'm trying to make is that the cost-benefit paradigm changes when dismissal, the right to dismissal, vests on speedy trial. This Court, in the judicial pay situation. What's the, what would have, do you think, do you think that it would have been a dismissal with prejudice? Judge, I think that, yes, that argument could have been made. It's a different question with the argument. Let's go to the prejudice question. If it wasn't dismissed, if it was dismissed without prejudice, Jeffress testified that, in his experience, the U.S. Attorney's Office would have immediately re-indicted, so, and that he would not have been moved out of the jail. Right. So what was the prejudice? Four ways. Number one, there's a possibility it might not have been re-indicted. Number two. The possibility is not enough to show prejudice. Okay. It's your burden is to show prejudice, not to show possibility that it wouldn't have been re-indicted. I think, in the totality, that's one factor. Alone, it may not be enough. I grant, I take the Court's point, and we'll tell you about the other three. Number two, there was a likelihood he would have gotten a new suppression hearing. And what does re-indicate evidence that he, I mean, what, so what if he had gotten a new suppression hearing? Because the excluded evidence could have been presented, and then he would have had standing, and he could have proceeded based on the available. What excluded evidence? That would be the result, that would be if he won the second suppression hearing. You mean the 302? The 302, right. That would have come in, and instead of, I mean, that was, without that, there was no standing. But with that, there was standing, and he would have had the suppression. But you still would have to show the merits. Okay. Right. And I think that I was trying to establish that before, but I don't want to get back into that. But number three, there's also a possibility he could have gotten, and I think a probability, he would have gotten a dismissal with prejudice. And at a minimum, he would have preserved that issue for appeal, and he never got the right to argue on appeal that it should have been dismissed with prejudice. All right. Number four. So the second point would depend on you're also showing prejudice with respect to the suppression hearing, right? Yes, Your Honor. Okay. So but strictly on the speedy trial dismissal, what else do you have? Okay. Number one, may not have been re-indicted. Number two, would have gotten a new suppression hearing. Number three, he at least would have been able to argue dismissal with prejudice and would have had a right to appeal on that, a procedural right that has been denied to him. Number four. Hold on. Let me just ask. If we think there's no, that he could not have established on appeal that he would have gotten a dismissal with prejudice, would that be the end of that point? Your Honor, I think it needs to be briefed before this Court reaches that decision. If this Court were to determine conclusively, I guess I would like to decide this de novo. We know what the standard is for dismissals with prejudice. Well, I submit it's equivalent to somebody, a lawyer not filing a timely notice of appeal. If you thought that that was. They get an appeal. They get to argue the merits. If you thought so, then you, if you thought you should have briefed that point in the court claim of prejudice from, is from dismissal without prejudice, you should have briefed it. You did brief it. So we have that briefing in front of us. Okay. All right. What's the fourth? Fourth one is that Judge Leon said in his opinion that if that had been filed, he would have gone to trial quicker. If that had happened, there's tangible prejudice because my client would have been done with his federal case sooner and he could have earned the Maryland state jail credits that he was denied because this case lingered. The only reason you can get the Maryland jail credits is this case was, he was here on a federal writ and it took three years to try the case. The big source of the prolonged delay was essentially his desire to build up a factual record. You're under presumably most of the Maryland problem, which is an independent claim of yours. Surely you don't want to make it dependent on this, would still survive. Maybe instead of 368 days, it would be 347 days. Right. And I think that's prejudice that he, if he had allowed, I'm sorry, he lost the whole point, the effect of the federal imprisonment derived from the Maryland sentence, lost that entirely. And you haven't, as I understand it, quibbling about a few days on that as a result of failure to bring a essentially futile speedy trial claim. Judge Williams, you make a fair point that maybe the stronger or at least more comprehensive relief he could get would be under the sentencing challenge. And I'll turn to that briefly now if the court will indulge me. If you could really, really briefly, because we're almost 10 minutes over. Thank you, Your Honor. On sentencing, we think resentencing is warranted. The deficiencies on ARDAP and Maryland jail credits were admitted by Jeffress. His deficiency is not even denied. The only question is prejudice. On ARDAP, we think the MEMPA case makes clear he's entitled to counsel on recommendations to the BOP. And if he's entitled to counsel, he's entitled to effective assistance. Jeffress admits he should have sought this and there's no harm in sending it back. That rule would be consistent with Strickland in the idea a defendant shouldn't spend an extra year in prison simply because of his attorney's error. On the Maryland jail credits, Judge Leon remarkably held that an extra year in jail is irrelevant. He said he was only considering the federal sentence. But that's not true. He had a consecutive sentence and, therefore, he couldn't only look at the federal sentence. He had to consider the combined sentence. That Maryland time was thus relevant and it was only indeterminate because Jeffress never took the time to work the calculations. Even now, he candidly admits he should have. This is de novo. I'm sorry. When you say it is indeterminate, that is, instead of being between four and eight, it's between five and eight? Is that the difference? So in either case, it's indeterminate. But he could have given clarification. He could have given he could have helped to make that a less indeterminate sentence if he'd simply done the good time calculations. But the judge knew or at least accepted the representation that he was going to serve between four and eight on his remaining time on his Maryland sentence, right? He had a 12-year sentence, Judge. No, but he had already served four years of it. At the sentence in colloquy, the judge says, I understand, he has four to eight left. And I think Jeffress said that's correct, right? I believe that's correct, Your Honor. And your position, I take it, is it wasn't really four to eight. If he had been in Maryland, it would have been five to eight. I guess that's correct, Your Honor. Well, because I should say in other words, because he wasn't in Maryland, it was five to eight. Is that right? Four to eight represented getting full credit for everything. And five, because he wasn't going to get the extra year, you would say it was five to eight. Yeah, I guess that's right. He wasn't going to be eligible for four because he was going to get he was no longer eligible to get an eight-year sentence. But it was still indeterminate and was still within the range that the district court said he understood at the colloquy, four to eight. But your basic point, though, is that notwithstanding ongoing indeterminacy, the judge neglected, counsel neglected an argument showing that the Federal sentence would have the effect of making the Maryland sentence de facto a year longer. That's right. He may not know exactly where it would have fallen, but we have every reason to think that it was a year longer. That's exactly right. Judge Leon may have said, he may only do four years, so I need to give him X. But in fact, he was going to have to do at least five years, so maybe he wouldn't have given him Y. Or the likelihood is I think he should have. Under this court's de novo standard, bottom line, Judge Leon's statement that an extra year of prison is irrelevant, essentially who cares, is entitled to no deference. It shouldn't be adopted by this court. We're viewing it de novo. That's not what you would do, I submit. And it's not a just decision. And this page should be remanded for what I submit will be a relatively short resentencing hearing. Thank you. And I reserve any time the Court won't allow for. You reserve any extra time we'll give you. Good morning, and may it please the Court. Dan Lenners of the United States. Excuse me. If I might start with Judge Wilkins' question about the ABNY standard, what a reasonable decision-maker would do. I think there are two decisions that Judge Leon made that that application of Strickland might apply to. The first is his decision that he would have granted a speedy trial act dismissal without prejudice, which the defendant does not challenge on appeal. He makes no argument on appeal that that was an unreasonable decision, that no reasonable judge would have reached that decision. And that's the standard. The standard is not de novo what would this court do, but under ABNY, the standard is would it have been unreasonable for the court below to have reached a different result. The second is on sentencing. Judge Leon's decision that had he learned that the defendant lost the potential to earn a year of credits off his Maryland sentence because he was held for trial in D.C., whether he would have reduced his sentence commiserately, and he said, no, it wouldn't have made a decision. And there I think the ABNY standard dovetails with this Court's typical review of sentencing, which is whether it's substantively or procedurally unreasonable. If it would have been — This is different from many of them in that we have a concrete reason to believe that a particular factor entails one extra year. Usually we're talking about sort of mushy factors that go in under 3553 and, you know, this huge discretion and so forth. Now, there is discretion, and the judge seems to have thought that 17 years was right. But if it's the case that the federal prosecution, in fact, added one year to the Maryland sentence, it's not a 17-year sentence. It's an 18-year sentence. And it's hard for me to see how it's reasonable to just blow that off as, oh, I would have done the same thing. I disagree that it's — looking at it as though it's a federal 18-year sentence. At the time he sentenced Miller for his conduct in the federal case, Judge Leon knew that Miller faced an indeterminate sentence in Maryland. It was indeterminate for him. Of eight to 12 years. And so Judge Leon could not have calculated a total sentence combining the federal and state charges. No, but he could calculate the impact of the sentence that he was given. He could calculate the impact of the federal imprisonment that was due to the federal prosecution. He — and to say I would have paid no attention seems to be a weak answer. I don't think it would have been substantively or procedurally unreasonable for Judge Leon to say, given the indeterminacy of the Maryland sentence, as well as the indeterminacy of whether the Maryland authorities would have considered Miller's loss of these potential good time credits when deciding whether to parole him after 12 years. Judge Leon said this is a Maryland issue. And so Miller could have gone before the Maryland authorities when he was eligible to be paroled after eight years and said, you should parole me now because I've lost a year of these good time credits. Is there actual evidence in the record that Maryland ever gained such claims? There's no evidence that I'm aware of, Your Honor. We know that the — at the time of Miller's sentencing, Mr. Jeffress pointed out to Judge Leon that Miller faced an indeterminate 8-to-12-year sentence and made strenuous arguments about why the Federal sentence should run concurrently with that. Judge Leon rejected those arguments. He said that.  He confronted a completely different argument. I mean, Mr. Smith, in the actual hearing, said, let's be clear, Judge, this year is simply an extra year of served time that is caused by this case, by him being written in and being in Federal custody instead of State custody during the time that he was serving Maryland incarceration. And the judge says it doesn't make any difference. And I think that's — The presence of indeterminacy, you're giving extraordinary weight to that. Let's take battles. Battles have enormous indeterminacy, do they not? That doesn't mean that all tactical and strategic decisions are of no consequence. They're often of enormous consequence. They may not affect the outcome of the battle, but they are important in terms of lives lost and things like that, or years served in prison in this case. Judge Leon didn't say this is of no consequence. He said, it doesn't affect my decision to sentence him for the conduct before me. He said, I don't care. Suppose this colloquy had gone on in the original sentencing. Would not Miller have had a good claim that the judge is saying, I don't care, made this unreasonable judgment? No, Your Honor. Our view is no, because Judge Leon, faced with the indeterminacy of what would happen in Maryland, both the number of years that Miller would serve as well as what would happen with these credits or lost credits in Maryland, would have appropriately said, I'm going to sentence Miller to a specific amount of time for the conduct before me, 17 years, which is exactly what Judge Leon did here. He said, I'm going to write it. So, yes, disregarding the proposition that those 17 years had, in effect, an add-on, because the time due to his incarceration with respect to this Federal sentence included the extra year in Maryland. They only had an add-on if Maryland also chose to ignore that effect when deciding whether to release Miller after 8 years or to hold him for the entire 12. As we know, Maryland ultimately held him for the entire 12, but Judge Leon could not have known that at the time he imposed the sentence. What was the guidelines range in this case that the Court settled upon?  So, Judge Leon's guideline range, as he calculated it, was different from the pre-sentence report. I do remember that the 204-month sentence he gave was in the middle of the guideline range that he ultimately calculated. And Miller did not challenge the substantive unreasonableness of that sentence on appeal. He challenged Judge Leon's decision to run the sentences consecutive rather than concurrently, and this Court rejected that challenge. I could address Mr. Miller's many other arguments, but unless the Court has no further questions, we'd ask that Judge Leon's decision be affirmed. Thank you. Well, I'll give you the rest of his time. No, I'll give you two more minutes. Thank you, Judge. I don't think I'll take that long. I just want to say three quick things. It was a guideline sentence except that it was run consecutive. And I think when it was run consecutive, it was no longer a guideline sentence. It was within the range, but it was run consecutive to the 12-year Maryland sentence. So, in fact, it was not a 17-year sentence we're talking about. It was a combined 29-year sentence on a white-collar case with $500,000 in fraud. An extraordinary sentence. Finally, I just want to say that the government's point that they made up here, that the notion that the Maryland Parole Board maybe could have fixed this federal problem and taken this into account, obviously, is not an answer. And, in fact, they did not because, as government counsel conceded, he served a full 12 years on his Maryland sentence. This was an extraordinarily lengthy, unusual sentence. I appreciate the extra time, Your Honor. If I have other questions, I'm happy to answer. Otherwise, I appreciate the Court's indulgence. Thank you. We'll take the matter under submission.
judges: Garland, Wilkins, Williams